THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| **TERRI GOODMAN, et al.,**<br><br>          **Plaintiffs**<br><br>     **v.**<br><br>**SHORE CLUB CONDOMINIUM**<br>**ASSOC., et al.,**<br><br>          **Defendants.** | **Civil No. 17-2226 (JS)** |

## OPINION

This matter is before the Court on the "Motion for Summary Judgment" ("motion") [Doc. No. 28] filed by defendants Shore Club Condominium Association ("Shore Club") and Thompson Realty Company ("Thompson"). The Court is called upon to address whether defendants are immune from suit, and whether plaintiffs have presented a prima facie claim of negligence. The Court received plaintiffs' opposition. [Doc. No. 29]. The Court exercises its discretion to decide defendants' motion without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1. For the reasons to be discussed, defendants' motion is DENIED.[1]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of this Court to hear the case. [Doc. No. 12].

**Background**

The Court will begin with a summary of the background facts. As required in the present context, plaintiffs will be given the benefit of all reasonable inferences from the facts of record and the evidence will be viewed in the light most favorable to plaintiffs. Plaintiffs in this action are Joel and Terri Goodman, husband and wife residing in Pennsylvania. Second Am. Compl. ("SAC") at ¶ 1 [Doc. No. 21]. Defendants in this action are Margate City ("Margate"), Thompson and Shore Club. [2] Id. at ¶ 2.

On January 1, 2016, plaintiff Terri Goodman tripped and fell on the way to her car that was parked in the Adams Avenue parking lot of Shore Club Condominiums where the Goodmans are unit owners. Id. Plaintiff severely fractured her arm as a result of the fall. Id. She required surgery and the placement of pins and plates to repair her arm. Id. at ¶ 9.

On April 3, 2017, plaintiffs filed the initial complaint in this action. [Doc. No. 1]. On November 16, 2017, plaintiffs filed their second amended complaint, which is the operative complaint. SAC at ¶¶ 1, 2.

---

[2] Plaintiff brings this action pursuant to 28 U.S.C. § 1332 alleging complete diversity of citizenship and an amount in controversy exceeding $75,000, exclusive of interest and costs. SAC at ¶¶ 2-4.

Plaintiffs allege the parking lot at Shore Club was "poorly lit, defective and dangerous." Id. Plaintiffs further contend that "[f]or some time prior to the date of the accident . . . defendant Shore Club Condominium Association owned, possessed maintained and controlled the area in question." Id. at ¶ 7. Plaintiffs also aver the area where plaintiff fell was "possessed, managed and controlled by defendant Thompson Realty Company, which negligently and carelessly maintained and controlled the area." Id. at ¶ 8. Plaintiffs allege defendants were negligent in "[f]ailing to warn plaintiffs of a dangerous condition, failing to provide proper lighting, failing to fix the dangerous and defective condition which was a tripping hazard, causing a dangerous and defective condition which was a tripping hazard, [and] otherwise acting negligently." Id. at ¶ 14.

Shore Club and Thompson filed their motion seeking summary judgment, arguing generally: (1) Shore Club is immune from suit pursuant to its own bylaws; (2) if Shore Club is immune, Thompson cannot be held liable as Thompson is merely an agent of Shore Club; (3) plaintiffs cannot make out a prima facie claim of negligence.[3] Plaintiffs counter that: (1) Shore

---

[3] Margate filed a separate motion seeking judgment in its favor. That motion will be addressed in a separate Opinion and Order.

Club's bylaws do not specifically confer immunity upon the condominium association for a claim of bodily injury; (2) Shore Club cannot be afforded public sidewalk immunity because the area where plaintiff fell was a private parking lot owned and controlled by Shore Club; and (3) they have presented a prima facie claim of negligence sufficient to present to a jury. For the reasons discussed below, defendants' summary judgment motion is denied.

## **Discussion**

### **A. Summary Judgment Standard**

A court should grant summary judgment when the record demonstrates "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if the evidence is such that a reasonable jury could find for the non-moving party on an issue affecting the outcome of the litigation. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). To determine if a material fact exists a court must view the evidence in the light most favorable to the non-moving party. "The evidence of the non-movant is to be believed, and all

justifiable inferences are to be drawn in his favor." Id. at 255.

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. Where, as here, the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment by observing that there is an absence of evidence to support an essential element of the nonmoving party's case. Id. at 325; see also Rahman v. Taylor, C.A. No. 10-0367 (JBS/KMW), 2013 WL 1192352, at *2–3 (D.N.J. Mar. 21, 2013). Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

A plaintiff opposing a defendant's motion for summary judgment has the burden of coming forward with evidence, not mere allegations, that raise a genuine dispute of material fact and suffice to enable a reasonable jury, giving all favorable inferences to the plaintiff as the party opposing summary judgment, to find in plaintiff's favor at trial. Fed. R. Civ. P. 56(c)(1)(A) further provides that, to create a genuine issue of material fact, the nonmovant must do so by:

citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

**B. Condominium Association Immunity**

Shore Club contends it is immune pursuant to N.J.S.A. 2A:62A-13(a), which confers immunity upon condominium associations if said immunity is explicitly set forth in a condominium association's bylaws. Def.'s Br. at 7. Plaintiffs contend Shore Club's reference to N.J.S.A. 2A:62A-13(a) is misplaced because the bylaws do not specifically provide for immunity to the association, nor do they provide immunity specifically for claims of bodily injury. Pl.'s Br. at 3. Plaintiffs point out that the bylaws merely provide limited immunity to the board and the individual members of the board in the execution of their office. Id. Plaintiffs note that only the condominium association is named in the complaint, not the board or its members. Id.

N.J.S.A. 2A:62A-13(a) states:

Where the bylaws of a qualified common interest community specifically so provide, the association shall not be liable in any civil action brought by or on behalf of a unit owner to respond in damages as a result of bodily injury to the unit owner occurring on the premises of the qualified common interest community.

Here, Shore Club's bylaws do not confer any immunity upon the association for negligence actions brought by unit owners. The section Shore Club relies on merely grants immunity to the board and the individual members of the board in executing their office. Specifically, the section provides:

> Unless acting in clear and certain bad faith, neither the Board as a body nor any Trustee, officer, or committee member shall be personally liable to any Unit Owner in any respect for any action or lack of action arising out of the execution of his office.

See Shore Club Bylaws ("Bylaws"), Ex. O to Pl.'s Br. [Doc. No. 29-11] (emphasis added).

In order for the condominium association to be immune from unit owners' claims of bodily injury, N.J.S.A. 2A:62A-13(a) requires that the bylaws "specifically" set forth such immunity. Here, the bylaws merely provide immunity to the board and the individual board members. The bylaws do not confer immunity upon the association for any action.

Shore Club's bylaws specifically set forth that the board and the association are separate entities. The bylaws define the association as "any record owner or co-owner of the title fee to any unit." Bylaws § 2.01. Article IV of the bylaws sets forth the criteria for being a member of the board. Specifically, the bylaws set forth that the board

members are elected from the association. See Bylaws § 4.01(a) and (b). Further, the bylaws state that "[t]he property, affairs and business of the association shall be managed by the board of trustees." Bylaws § 6.01.

It is evident from the bylaws that the board of trustees and the association are two separate entities. The association is composed of every individual unit owner while the board members are elected from the association. Accordingly, Shore Club's bylaws confer immunity on the board and individual board members, but the bylaws are silent on immunity as to the association. Further, the section Shore Club cites does not address actions for bodily injury, but only provides immunity to the board and individual board members for any action or inaction arising out of the execution of their office. N.J.S.A. 2A:62A-13(a) provides for immunity to associations of common interest communities only when such immunity is "specifically" set forth in the association's bylaws. Because such immunity is not specifically set forth in Shore Club's bylaws, the association is not immune pursuant to N.J.S.A. 2A:62A-13(a).[4]

---

[4] Defendants contend if Shore Club is immune pursuant to the bylaws, Thompson, acting as Shore Club's agent, cannot be held liable. Def.'s Br. at 5. However, as noted above, Shore Club is not immune pursuant to N.J.S.A. 2A:62A-13(a) because the bylaws do not specifically set forth such immunity. Accordingly, judgment will not be entered in favor of Shore

## C. Public Sidewalk Immunity

Shore Club contends it is entitled to judgment in its favor pursuant to New Jersey's residential public sidewalk immunity. Def.'s Br. at 9. Plaintiffs contend Shore Club is not entitled to public sidewalk immunity because the fall did not occur on a public sidewalk but in a private parking lot. Pl.'s Br. at 8. Plaintiffs contend it is evident the area where plaintiff fell is a private parking lot as it was blacktopped and marked with numbered parking spaces. Id.

"In New Jersey, residential property owners, unlike commercial property owners, have no duty to maintain the sidewalks adjacent to their land so long as they do not affirmatively create a hazardous condition." Decter v. Hejib, Docket No. A-3073-16T3, 2018 N.J. Super. Unpub. LEXIS 1289, at *6 (N.J. Sup. Ct. App. Div. June 4, 2018) (citing Deberjeois v. Schneider, 254 N.J. Super. 694, 699-700 (App. Div. 1991)); see also Stewart v. 104 Wallace Street, Inc., 87 N.J. 146, 159 (1981) (holding the duty to maintain sidewalks is confined to commercial property owners); Lodato v. Evesham Township, 388 N.J. Super. 501, 507 (App. Div. 2006) (holding that residential landowners remain protected by common-law public sidewalk immunity).

---

Club or Thompson on these grounds and the Court need not address Thompson's agency argument.

In *Luchejko v. City of Hoboken*, the New Jersey Supreme Court extended residential sidewalk immunity to a condominium complex after a plaintiff slipped and fell on ice on a public sidewalk abutting the condominium property. 207 N.J. 191, 211 (2011). The Court determined the condominium complex was a residential property rather than a commercial one. *Id.* Accordingly, common law public sidewalk immunity shielded the condominium from liability for the plaintiff's fall. *Id.*

Shore Club cites *Luchejko* for the proposition that it should not be held liable for plaintiff's injuries. Def.'s Br. at 9. However, the Court disagrees with Shore Club that *Luchejko* governs the outcome of this case and confers upon the association immunity for this type of accident. There is no dispute that Shore Club is a residential property. However, *Luchejko* is distinguishable from the case before this Court because the accident here did not occur on a public sidewalk abutting the property but in a parking lot, a common area of the condominium complex.

The facts here are more closely aligned with those found in *Qian v. Toll Brothers* than *Luchejko*. In *Qian*, the New Jersey Supreme Court addressed whether a condominium can be held liable for injuries occurring on private walkways that are part of a condominium's common elements. 223 N.J. 124, 138 (2015). The Court determined the walkway at issue in *Qian*

10

was a private walkway within the complex, not a public sidewalk abutting the property as in Luchejko. Id. Because the walkway was part of the condominium's common elements, the Court determined the condominium association was not immune from suit. Id. Thus, whether a condominium association will be liable for an accident occurring on a walkway on or abutting condominium property will largely depend on whether the walkway is characterized as public or private. Id.

In Qian, the Court stated that "[a] critical factor in determining whether a sidewalk is 'public' is whether 'the municipality ha[s] sufficient control over or responsibility for the maintenance and repair of the sidewalk.'" Id. (quoting Norris v. Borough of Leonia, 160 N.J. 427, 443 (1999)). Generally, a walkway is classified as either public or private "based on who owns or controls the walkway, not based on who uses it." Id. In making its determination that the walkway at issue in Qian was private, the Court noted that "[n]othing in the record remotely suggest[ed]" the township had "control or responsibility over the interior walkways of the condominium complex." Id. Further, the sidewalk where the plaintiff fell was considered part of the common elements of the condominium complex, and its maintenance fell "under the control of the [a]ssociation." Id. at 141. The Court also noted that in contrast to Luchejko where the association had no

responsibility to maintain the public sidewalk, the association's bylaws imposed upon it the responsibility to maintain the common elements in a safe condition. Id.

Here, plaintiff did not fall on a public sidewalk abutting the condominium complex as in Luchejko. Plaintiff fell in a parking lot that is part of the common elements of Shore Club similar to the private walkway in Qian. The area where plaintiff fell was a parking area commonly used by vehicles, not a sidewalk. See Molina v. Roman, Docket No. A-5357-13T1, 2016 WL 4473255, at *6 (N.J. Sup. Ct. App. Div. Aug. 25, 2016) (distinguishing between "a driveway commonly used by vehicles" and "an abutting public sidewalk"). "A sidewalk is defined as '[t]hat part of a public street or highway designed for the use of pedestrians, being exclusively reserved for them.'" Id. (quoting Gaskill v. Active Envtl. Techs., Inc., 360 N.J. Super. 530, 534 (App. Div. 2003)). Here, the area where plaintiff fell was not "exclusively reserved" for pedestrians. In fact, the area was blacktopped and marked with numbered parking spaces assigned to individual unit owners. See Ex. B to Pl.'s Br.; Bylaws § 10.01 (pg. 33). Cars would be required to drive over the area where plaintiff fell in order to pull into the numbered parking spaces. While individuals would be required to walk

in the area to get to their vehicles, the area was not "exclusively reserved" for pedestrians.

In determining whether the area where plaintiff fell is public or private, a "critical factor" is whether the municipality has control or responsibility over the area. See Qian, 223 N.J. at 138 (citing Norris, 160 N.J. at 443). Frank Ricciotti, Superintendent for the City of Margate Public Works Department, testified that Margate is not responsible for maintaining anything "inside the curb line." Ricciotti Dep., Ex. M to Def.'s Br. [Doc. No. 28-10] at 6:1-11; 9:4-8. He indicated more specifically that Margate is responsible for maintaining the street up to and including only the "face of the curb line" or the street side of the curb line. Id. at 9:22-10:13. On the other hand, John Grassi, Shore Club's full-time maintenance man, indicated Shore Club is responsible for the area where plaintiff fell. Grassi Dep., Ex. L to Def.'s Br. [Doc. No. 28-10] at 3:16-18; 34:18-35:11; Grassi Mar. 21, 2016 Statement, Ex. L to Def.'s Br. [Doc. No. 28-10]. Further, Shore Club marked the area with numbered parking spaces and assigns those parking spaces to individual unit owners. See Ex. B to Pl.'s Br.; Bylaws § 10.01 (pg. 33). Shore Club also "resealed" the parking lot, including the area where plaintiff fell in 2016. Grassi Dep. at 6:14-19. Thus, just as in Qian, nothing in the record indicates Margate controlled

the area where plaintiff fell. To the contrary, the record indicates the area where plaintiff fell was a private parking lot owned and controlled by Shore Club.

Further, Shore Club's master deed defines the common elements as including "all parking areas, access roads, driveways, walkways, [and] pedestrian sidewalks." Master Deed, Ex. G to Def.'s Br. [Doc. No. 28-7] at 10. Thus, just as in Qian where the bylaws defined the walkway as a common element of the property, the master deed here indicates the parking area and driveways are common elements of the condominium. The master deed further states that "[t]he maintenance, repair, replacement, cleaning, sanitation, management, operation and use of the Common Elements shall be the responsibility of the association." Id. at 13. The master deed also states that "[t]he association shall have the right to make or cause to be made such alterations and improvements to the common elements as in its opinion may be beneficial and necessary." Id. Thus, similar to Qian and in contrast to Luchejko, the condominium's internal documents state that the association is responsible for maintenance of the area where plaintiff fell. The record indicates the area where plaintiff fell was a private parking lot owned and controlled by Shore Club and considered to be among the common elements of the condominium. Accordingly, the area is analogous to the

internal walkway in <u>Qian</u> and the condominium association cannot be afforded residential public sidewalk immunity. Judgment in defendants' favor is not appropriate on these grounds.

### D. Negligence

Shore Club argues even if it is not entitled to immunity, plaintiffs cannot make out a prima facie claim of negligence because they cannot show proof of foreseeability of harm. Def.'s Br. at 17. To prove a negligence claim under New Jersey law, plaintiffs must show: (1) the existence of a duty of care, (2) defendants breached that duty, (3) proximate cause, and (4) actual damages. <u>Brunson v. Affinity Fed. Credit Union</u>, 199 N.J. 381, 400 (2009); <u>Ricco v. Walmart</u>, C.A. No. 12-1087 (NLH/KMW), 2013 WL 5232496, at *3 (D.N.J. Sept. 16, 2013). Further, "an injured plaintiff . . . must prove, as an element of the cause of action, that the defendant[s] had actual or constructive knowledge of the dangerous condition that caused the accident." <u>Turkowski v. Stanbery Hamilton, LLC</u>, Docket NO. A-2907-12T2, 2014 WL 1271464, at *3 (Mar. 31, 2014) (quoting <u>Nisivoccia v. Glass Gardens, Inc.</u>, 175 N.J. 559, 563 (2003)).

Whether defendants owed a duty of care to plaintiffs is a matter of law to be determined by a court. <u>Ricco</u>, 2013 WL 5232496, at *4 (citing <u>Holmes v. Kimco Realty Corp.</u>, 598 F.3d

115, 118 (3d Cir. 2010)). Here, Shore Club's duty to plaintiffs is defined by statute. Specifically, N.J.S.A. 46:8B-14(a) states that a condominium association shall be responsible for the performance of "the maintenance, repair, replacement, cleaning and sanitation of the common elements." See also Lechler v. 303 Sunset Ave. Condo. Ass'n, 452 N.J. Super. 574, 586 (App. Div. 2015) (holding that N.J.S.A. 46:8B-14(a) establishes a duty of care a condominium association owes to unit owners). Further, "[a] condominium association's duty to keep the common elements reasonably safe is non-delegable." McDaid v. Aztec West Condo. Ass'n, Docket No. A-88-16, 2018 WL 3431322, at *7 (N.J. July 17, 2018) (citing N.J.A.C. 5:10-4.1(a)).

Thus, N.J.S.A. 46:8B-14(a) establishes the duty of care that Shore Club owed to plaintiffs. However, whether the association breached that duty presents a genuine issue of material fact for a jury. Plaintiffs have presented evidence from which it could be determined Shore Club and Thompson breached their duty of care to plaintiffs.

Plaintiffs cite their expert's report to show there is "more than enough evidence" in the record to overcome defendants' motion for summary judgment. Pl.'s Br. at 12. Upon examination of the area where plaintiff fell, plaintiffs' expert noted a "depression" in the area that was

five inches wide and seven inches long. Expert Report, Ex. G to Pl.'s Br. [Doc. No. 29-6] at 8. The expert noted, "[a]t its greatest depth, the difference in surface level between the asphalt walkway and the top of the curb was [one] inch." Id. The expert stated "[a]t this depth and in this situation where one would need to walk on or around the curbing, the defect would be considered to be a walkway safety hazard." Id.

As to lighting, the expert reported that "[t]here was no direct illumination" in the parking lot area. Id. The expert described the building vestibule as "well lit" and noted there were lights illuminating the stone path leading out of the building. Id. However, the expert further noted there was no street lighting on the Adams Avenue side of the building where the parking lot was and no "significant light fixtures mounted on the exterior of the building." Id. Accordingly, the expert described a "sharp drop-off in illumination between the illuminated stone path" leading out of the building and "the unilluminated asphalt walkway" where plaintiff fell. Id.

The expert further reported, based on the appearance of the depression in the parking lot, "including the significant accumulation of sediment in it, the height differential had been in a dangerous state for a long period of time prior to the date of the accident." Id. The expert also indicated the

defect was "difficult to distinguish, particularly under the nighttime lighting conditions" and was "deceptive visually." Id. The expert rated the overall "maintenance of the walkway" as fair to poor and more specifically where plaintiff fell, the expert rated the maintenance as "poor." Id. at 9. The expert reported "four major factors" caused plaintiff's fall: "There was a tripping danger in the established walkway due to the main surface having settled and/or deteriorated below that of the curb; Traversing the defect area was encouraged because the normal line of street sidewalk was obstructed by the presence of a parking lot, which made pedestrians . . . squeeze along the curb; The area was not directly lit and the scant lighting that was available was poorly distributed; and no warnings were provided of the inconspicuous and deceptive hazard." Id.

Plaintiffs presented photographs of the area to show the alleged uneven pavement. Exhibit B to Pl.'s Br [Doc. No. 29-4]. Further, plaintiffs testified to the poor lighting in the parking lot area and presented a photograph of the parking lot at night to show the alleged poor lighting in the area at night. Exhibit B to Pl.'s Br; Terri Goodman Dep., Ex. I to Pl.'s Br. [Doc. No. 28-9] at 24:25-25:5; Joel Goodman Dep., Ex. J to Pl.'s Br. [Doc. No. 28-9] at 12:11-13:4.

From this evidence a jury could reasonably determine defendants breached their duty of care to plaintiffs. N.J.S.A. 46:8B-14(a) defines a condominium association's duty as "the maintenance, repair, replacement, cleaning and sanitation of the common elements." A jury could determine from the expert testimony, the deposition testimony of the parties and the photographs of the area that there existed a dangerous condition in the parking lot in the form of uneven pavement and inadequate lighting. Accordingly, a jury could determine defendants breached their duty of maintaining and repairing the common elements of the condominium.

Further, a jury could determine from the evidence that the condominium association had constructive notice of the alleged dangerous condition. Shore Club argues there were no prior complaints regarding the area prior to plaintiff's fall, thus, there was no foreseeability of harm. However, defendants' duty includes a duty of reasonable care to guard against any dangerous conditions relating to the common elements the association "either knows about or should have discovered." McDaid, 2018 WL 3431322, *7 (emphasis added) (citing Hopkins v. Fox Lazo Realtors, 132 N.J. 426, 434 (1993)). A jury could determine that defendants should have been aware of the alleged uneven pavement and inadequate lighting. Additionally, plaintiff's expert reported the

"depression" in the parking lot had been there "for a long period of time" as evidenced by the appearance of the depression and the build-up of sediment. From this testimony, a jury could determine defendants should have discovered and repaired the depression in the parking lot.

Further, Shore Club contends that Exhibit P-1, a photograph of the area where plaintiff fell, does not indicate any dangerous condition as there are no visible holes or cracks. Def.'s Br. at 18. However, Exhibit P-1 is not the only photograph of the area in the record. Plaintiffs have presented other photographs of the area taken from different angles from which a jury could determine there was a dangerous condition in the form of uneven pavement and/or poor lighting. See Ex. B to Pl.'s Br. Further, there is other evidence in the record from which a jury could determine there existed a dangerous condition such as the testimony of the parties and plaintiff's expert report.

Shore Club also argues in the alternative that it cannot be held liable for a dangerous condition of which plaintiffs were aware. Def.'s Br. at 19. Specifically, Shore Club contends a reasonable jury could not determine plaintiffs, who frequented their condominium, were unaware of any alleged dangerous condition in the parking lot. Id. Plaintiffs contend they could not have known of the dangerous condition

because they rarely parked in the Adams Avenue parking lot
and the area was not well lit when they traversed the area on
the night of the fall. Pl.'s Br. at 11.

Defendants cite Reyes v. Egner for the proposition that
they cannot be held liable for a condition of which plaintiffs
should have been aware. 404 N.J. Super. 433 (App. Div. 2009).
However, Reyes specifically addressed a lessor's duty to a
short-term lessee. Id. at 438. The court defined that duty as
requiring disclosure of known dangerous conditions. Id. at
456. In Reyes, the tenant admitted to being aware of the
alleged dangerous condition prior to the accident, and thus,
the court determined the lessor could not be held liable for
"concealing a dangerous condition." Id. at 462. Here, the
duty is statutorily defined and different than that of the
duty a lessor owes to a short-term lessee. Further, plaintiffs
made no admission similar to the lessee in Reyes that they
were aware of the dangerous condition before the accident
occurred. In fact, plaintiffs argue they could not have known
of the condition because they rarely parked on the Adams
Avenue side of the building where plaintiff fell and the area
was so dark they could not have seen the depression prior to
the accident.

The decision in Lechler v. 303 Sunset Ave. Condo Ass'n
is more factually analogous to this case. 452 N.J. Super. 574

(App. Div. 2017). In Lechler, a unit owner brought claims against a condominium association and the property manager after he fell down a flight of stairs missing a center handrail. Id. at 578. The court determined although the fact that the stairs were missing a center handrail was obvious, the association and property manager were in a better position than the plaintiff to know the absence of a center handrail presented a safety issue that should be addressed. Id. at 586. Thus, the court determined although the missing handrail should have been obvious to the plaintiff, the association could still be held liable. Id. Accordingly, even if plaintiffs should have been aware of the alleged defects of uneven pavement and inadequate lighting, such a fact would not necessarily preclude liability. Similar to Lechler, a jury could determine Shore Club and Thompson were in a better position to discover and repair any alleged dangerous condition in the parking lot. Plaintiffs have presented evidence from which it could be determined defendants breached a duty to plaintiffs and that breach was the proximate cause of plaintiffs' injuries. Accordingly, defendants' summary judgment motion will be denied.

**Conclusion**

For the reasons discussed above, defendants' summary judgment motion will be denied. An appropriate accompanying Order will be entered.

/s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge

Dated: September 10, 2018